# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Leonard Green
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  September 22, 2010

Mr. Saul C. Belz
Glankler Brown
One Commerce Square, Suite 1700
Memphis, TN 38103

Ms. Tracy Cobb Braintwain
King & Spalding
1180 Peachtree Street, N.E.
Atlanta, GA 30309

Mr. John Patterson Brumbaugh
King & Spalding
1180 Peachtree Street, N.E.
Atlanta, GA 30309

Mr. Paul Clement
King & Spalding
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC 20006

Mr. Joseph David Daley
Coughlin, Stoia, Geller, Rudman & Robbins
655 W. Broadway
Suite 1900
San Diego, CA 92111

Ms. Amy Ferguson Dudek
Glankler Brown
One Commerce Square
Suite 1700
Memphis, TN 38103

Mr. Shelby S. Guilbert Jr.
King & Spalding
1180 Peachtree Street, N.E.
Atlanta, GA 30309

Mr. L. Joseph Loveland

King & Spalding
1180 Peachtree Street, N.E.
Atlanta, GA 30309

Mr. Mark Solomon
Coughlin, Stoia, Geller, Rudman & Robbins
655 W. Broadway
Suite 1900
San Diego, CA 92111

                Re: Case No. 08-6194, *Louisiana School Employees' Re, et al v. Ernst & Young, LLP*
                    Originating Case No. 06-02214

Dear Counsel,

    The court today announced its decision in the above-styled case.

    Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                    Yours very truly,

                    Leonard Green, Clerk


                    Linda K. Martin
                    Deputy Clerk


Enclosures

Mandate to issue.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0308p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LOUISIANA SCHOOL EMPLOYEES'
RETIREMENT SYSTEM; DEBRA SWIMAN,
individually and on Behalf of All Others
Similarly Situated,

               *Plaintiffs-Appellants,*

    *v.*

ERNST & YOUNG, LLP,

            *Defendant-Appellee.*

No. 08-6194

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 06-02214—Samuel H. Mays, Jr., District Judge.

Argued: October 15, 2009

Decided and Filed: September 22, 2010

Before: BOGGS, MOORE, and GIBSON, Circuit Judges.[*]

---

### COUNSEL

**ARGUED:** Joseph D. Daley, COUGHLIN STOIA GELLER RUDMAN & ROBBINS
LLP, San Diego, California, for Appellants. L. Joseph Loveland, KING & SPALDING
LLP, Atlanta, Georgia, for Appellee. **ON BRIEF:** Joseph D. Daley, Mark Solomon,
COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP, San Diego, California,
for Appellants. L. Joseph Loveland, John P. Brumbaugh, Tracy C. Braintwain, Shelby
S. Guilbert, Jr., KING & SPALDING LLP, Atlanta, Georgia, Paul D. Clement, KING
& SPALDING LLP, Washington, D.C., for Appellee.

---

[*]The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the
Eighth Circuit, sitting by designation.

No. 08-6194     *Louisiana School Employees' Retirement*     Page 2
                *Sys., et al. v. Ernst & Young, LLP*

---

## OPINION

---

JOHN R. GIBSON, Circuit Judge.  This appeal is from a dismissal on the pleadings of a securities fraud class action pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  This lawsuit against public accounting firm Ernst & Young is brought on behalf of all persons who and entities which purchased the publicly traded securities of Accredo Health, Inc. ("Accredo") between June 16, 2002 and April 7, 2003 (the "Class Period").  Accredo is a pharmaceutical distribution company.

The class contends that the district court misinterpreted and misapplied the Supreme Court's scienter-pleading standard from *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), and instead used the higher pre-*Tellabs* pleading standard set forth in *Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001) (en banc).  Plaintiffs further allege that the district court erred when it rejected facts that, when considered collectively, raise a strong inference of defendant's scienter.  Finally, the class asserts that the district court abused its discretion by ignoring plaintiffs' request to be allowed to move for amendment should the court dismiss any part of the complaint.

For the reasons set forth below, we **AFFIRM** the judgment of the district court.

### I. Background

The Louisiana School Employees' Retirement System and Debra Swiman (the "Lead Plaintiffs"), individually and on behalf of all others similarly situated, filed a complaint against Defendant Ernst & Young for alleged violations of federal securities laws.  Each member of the Plaintiff Class purchased or otherwise acquired Accredo securities during the Class Period.  Ernst & Young provided services to Accredo during the Class Period until Accredo terminated Ernst & Young as its auditor because of alleged professional malpractice.

No. 08-6194     *Louisiana School Employees' Retirement*          Page 3
                *Sys., et al. v. Ernst & Young, LLP*

Ernst & Young's involvement began well before the Class Period. Gentiva Health Services Inc. ("Gentiva"), a company Accredo was interested in acquiring, retained Cap Gemini/Ernst & Young (Ernst & Young's consulting arm) between May and September 2000. Gentiva needed assistance in the collection of hundreds of millions of dollars of outstanding receivables owed to one of its divisions, the Speciality Pharmaceutical Services division ("Gentiva Division"). In September 2000, Cap Gemini/Ernst & Young recommended that Gentiva write off a substantial portion of its accounts receivable and redirect its focus on more current accounts receivable. As a result of Cap Gemini/Ernst & Young's audits of Gentiva's financials, in 2000 Gentiva wrote off approximately $92 million in uncollectible accounts receivable attributable to the Gentiva Division.

In the summer of 2001, Accredo sought to expand its business through acquiring from Gentiva substantially all of the assets of the Gentiva Division, which was composed of two kinds of pharmacies: the "acute" and "chronic" health care products and services segments. In September 2001, Accredo's senior officers and Ernst & Young began conducting due diligence in connection with the potential acquisition. Plaintiffs allege that between September 2001 and June 2002, during its audit of the Gentiva Division, Ernst & Young learned that nearly $58.5 million of acute segment receivables were uncollectible. They further allege that Ernst & Young recognized that the Gentiva Division's allowance for doubtful accounts was understated, causing Accredo's net income and earnings per share to be materially overstated during the Class Period. Despite Ernst & Young's knowledge of the uncollectible accounts on Accredo's balance sheet, Ernst & Young issued an unqualified audit opinion on Accredo's 2002 fiscal year financial results and approved the quarterly reports in Accredo's 10-Qs for the first and second quarters of fiscal year 2003. On January 2, 2002, Gentiva and Accredo entered into an Asset Purchase Agreement. Accredo then acquired the Gentiva Division on June 13, 2002.

Plaintiffs further allege that following its June 2002 acquisition of the Gentiva Division, Accredo tried to sell the acute segment of the Gentiva Division but was not

No. 08-6194     *Louisiana School Employees' Retirement*          Page 4
                *Sys., et al. v. Ernst & Young, LLP*

able to do so because of the uncollectible receivables. Accredo was forced to write off $58.5 million in uncollectible receivables.

Plaintiffs aver that Ernst & Young was involved in the alleged accounting fraud from the beginning of the due diligence preceding the acquisition of the Gentiva Division and that Ernst & Young knew of the uncollectible receivables as early as 2001. Plaintiffs allege that Accredo's acquisition of the Gentiva Division depended on Ernst & Young's issuance of unqualified audit opinions on the Gentiva Division's financial statements, that Accredo retained Ernst & Young to analyze the adequacy of the allowance for the Gentiva Division's doubtful accounts, and that accounts receivable comprised seventy-five percent of the $415 million purchase price. Ernst & Young's unqualified audit opinions were incorporated into the 2002 proxy statement filed with the Securities & Exchange Commission ("SEC").

Gentiva was intent on selling both the acute and chronic segments of the Gentiva Division to Accredo; Accredo needed the chronic segment to enable Accredo to become the billion-dollar company it aspired to be. Plaintiffs allege that Accredo and Ernst & Young hid the acute segment's accounts receivable problems from investors so that Accredo could proceed with the transaction. Accredo intended to rid itself of the acute segment soon after the transaction was completed. The 2002 proxy statement stated that Accredo would sell the acute segment by December 31, 2002.

On April 7, 2003, William Drummond, an Ernst & Young partner and the lead auditor during the Class Period, admitted to Joel Kimbrough, Accredo's Senior Vice President and CFO, that "there was a problem." A day later, an Accredo press release disclosed that, due to the understated allowance for doubtful accounts, the Gentiva Division's receivables had been overstated. This announcement caused a one-day forty-four percent drop in Accredo's stock price.

On May 2, 2003, Accredo consulted with Ernst & Young about its intention to present information about the write-off in an upcoming press release. Three days later, Accredo issued a press release, stating that it had taken a current period charge to

No. 08-6194     *Louisiana School Employees' Retirement*          Page 5
                *Sys., et al. v. Ernst & Young, LLP*

earnings to write off $58.5 million of acute accounts receivable that it had acquired from Gentiva. On May 5, 2003, Accredo issued its fiscal year 2003 third quarter Form 10-Q, which included a note to the consolidated financial statements that if the collection rates had been evaluated based on data as of January 1, 2003, a $58.5 million charge would have been recorded as of that date. Plaintiffs allege that this change in the language was made to avoid having to restate Accredo's Class Period financial statements. That same day, Accredo terminated Ernst & Young as its auditor and filed a civil suit against Ernst & Young charging professional malpractice. (Cir. Ct. Tenn. No. CT-002556-03).[1]

On September 15, 2004, plaintiffs filed a consolidated complaint against Accredo and two of its executives in a related class action (the "Accredo Action"), which settled four years later. *In re Accredo Health, Inc. Sec. Litig.*, Civ. No. 03-2216-BBD (W.D. Tenn.). Lead Plaintiffs were also appointed as lead plaintiffs in the Accredo Action. On April 13, 2006, plaintiffs filed this separate single-count lawsuit against Ernst & Young, and in June 2006, Ernst & Young moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the pleading requirements of the PSLRA. The motion to dismiss the complaint was pending when the Supreme Court decided *Tellabs*, resolving a circuit split regarding the relevance of competing inferences in evaluating whether a complaint satisfies the "strong inference" of scienter requirement of the PSLRA.

On August 14, 2008, the district court entered its order granting Ernst & Young's motion to dismiss. The district court held that Ernst & Young is not liable under Rule 10b-5 for statements that it did not make. With respect to Ernst & Young's audit report on Accredo's 2002 financial statements, which was included in Accredo's fiscal year form filed with the SEC, the district court held that "[a] review of the complaint as a whole shows that plaintiffs have failed to meet the PSLRA's requirement of pleading with particularity facts that give rise to a strong inference of scienter." The district court thus dismissed the complaint. In its discussion of scienter, the district court correctly

---

[1] On September 26, 2003, Accredo voluntarily dismissed the lawsuit and agreed to proceed with formal arbitration.

No. 08-6194      *Louisiana School Employees' Retirement*                    Page 6
                 *Sys., et al. v. Ernst & Young, LLP*

paraphrased the *Tellabs* standard but also repeated this Court's pre-*Tellabs* holding, which articulates a higher pleading standard:

> [P]laintiffs are only entitled to the most plausible of competing inferences. *Helwig*, 251 F.3d at 553. The "strong inference" requirement means that a plaintiff is entitled only to the most plausible of competing potential inferences. *Id.* at 553.

(quoting *Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001) (en banc)). Plaintiffs did not amend their complaint while the motion to dismiss was pending and did not seek leave to do so after the district court entered its order. However, a reference to amending was in a footnote on the last page of plaintiffs' brief in response to Ernst & Young's motion to dismiss, stating, "[s]hould the Court grant any portion of E&Y's motion to dismiss, Lead Plaintiffs respectfully request an opportunity to move to amend the pleadings and demonstrate that an amendment would cure any deficiencies."

Based on the allegations in their complaint, plaintiffs contend that Ernst & Young is liable as a primary participant in a fraudulent scheme and course of business that defrauded the plaintiffs, deceived the investing public about Accredo's financial results, artificially inflated the price of Accredo's publicly traded securities, caused plaintiffs to be damaged when Accredo's share price fell as a result of the revelations of accounting fraud, enabled Ernst & Young to collect accounting fees from Accredo, and allowed Accredo to complete its acquisition of the Gentiva Division. Plaintiffs contend that all of these actions were accomplished by disseminating false and misleading statements and concealing materially adverse facts on numerous occasions.

Ernst & Young argues that it tested the substantial reserve for accounts receivable that Accredo management had established and found that reserve to be reasonable. Two other accounting firms, Price Waterhouse Coopers LLP and Deloitte & Touche LLP, issued unqualified audit opinions on financial statements that included the Gentiva Division. Price Waterhouse Coopers audited Gentiva's financial statements (including the Gentiva Division) on February 6, 2002, and Deloitte & Touche audited

No. 08-6194      *Louisiana School Employees' Retirement*        Page 7
                 *Sys., et al. v. Ernst & Young, LLP*

Accredo's financial statements for the year ending June 30, 2003.[2]  Neither auditor found evidence of an inadequate allowance for doubtful accounts of the Gentiva Division.

On appeal, plaintiffs argue that the district court erred in granting Ernst & Young's motion to dismiss the complaint because the complaint was pleaded with the requisite particularity, giving rise to a strong inference that Ernst & Young acted with scienter when it allegedly issued a false or misleading audit opinion on Accredo's financial statements.  Specifically, plaintiffs argue that the district court utilized the improper pre-*Tellabs* evidentiary inferences in concluding that their allegations do not raise a strong inference of scienter.  Additionally, plaintiffs assert that the court erred in dismissing the complaint with prejudice rather than granting leave to amend.

## II.  Discussion

### A.  Dismissal in Securities Fraud Cases

We review the district court's decision to dismiss the complaint *de novo.  Ley v. Visteon Corp.*, 543 F.3d 801, 805 (6th Cir. 2008).  In doing so, we may affirm the judgment of the district court on any ground supported by the record.  *Hoffman v. Comshare, Inc.* (*In re Comshare, Inc. Sec. Litig.*), 183 F.3d 542, 548 (6th Cir. 1999) (citations omitted).  We must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts consistent with its allegations that would entitle it to relief.  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder prohibit "fraudulent, material misstatements or omissions in connection with the sale or purchase of a security."  *Frank v. Dana Corp.*, 547 F.3d 564, 569 (6th Cir. 2008) (citation omitted).  To state a securities fraud claim under Section 10(b), a plaintiff

---

[2] Accredo acquired the Gentiva Division on June 13, 2002.

"'must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury.'" *Id.* (quoting *Comshare*, 183 F.3d at 548). Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681 (6th Cir. 2004) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)).

Securities fraud claims arising under Section 10(b) must satisfy the particularity pleading requirements of Federal Rule of Civil Procedure 9(b). *PR Diamonds, Inc.*, 364 F.3d at 681. A plaintiff's complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank,* 547 F.3d at 570 (citation omitted). In addition, the PSLRA imposes additional and more "[e]xacting pleading requirements" for pleading scienter in a securities fraud case. *Tellabs*, 551 U.S. at 313. Under the PSLRA's heightened pleading requirements, any private securities complaint alleging that the defendant made a false or misleading statement must:

> (1) . . . specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed [and]
>
> (2) . . . state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(1), (2) (emphasis added). The PSLRA "requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 313 (quotation and citation omitted). The Supreme Court explained in *Tellabs* that Congress adopted the "strong inference" standard because it intended to raise the bar for pleading scienter, *id.* at 323-24, but the PSLRA did not change the state of mind required to prove securities fraud. *Comshare*, 183 F.3d at 548-49.

No. 08-6194     *Louisiana School Employees' Retirement*          Page 9
                *Sys., et al. v. Ernst & Young, LLP*

In the securities fraud context, we have long premised liability on at least "reckless" behavior. *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1025 (6th Cir. 1979). We have held that, following passage of the PSLRA, a plaintiff may plead scienter in a securities fraud complaint by alleging facts that give rise to a strong inference of recklessness. *Comshare*, 183 F.3d at 549. Recklessness sufficient to satisfy 10b-5 is "a mental state apart from negligence and akin to conscious disregard." *Id.* at 550. It is "highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it." *PR Diamonds, Inc.*, 364 F.3d at 681 (citing *Mansbach*, 598 F.2d at 1025). A plaintiff may survive a motion to dismiss only by pleading with particularity facts that give rise to a strong inference that the defendant acted with knowledge or conscious disregard of the fraud being committed. *Id.* at 682 (citing *Comshare*, 183 F.3d at 548-49).

The standard of recklessness is more stringent when the defendant is an outside auditor. In that instance, recklessness requires a mental state "so culpable that it approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company." *PR Diamonds, Inc.*, 364 F.3d at 693 (citations omitted).

> Scienter requires more than a misapplication of accounting principles. The [plaintiff] must prove that the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts.

*Id.* at 693-94 (quotation marks and citations omitted). "To allege that an independent accountant or auditor acted with scienter, the complaint must identify specific, highly suspicious facts and circumstances available to the auditor at the time of the audit and allege that these facts were ignored, either deliberately or recklessly." *Id.* at 694 (quotations and citations omitted).

The well-pleaded facts must give rise not merely to an inference of scienter, but to a *strong* inference of scienter. "[T]he court must take into account plausible opposing

No. 08-6194      *Louisiana School Employees' Retirement*                Page 10
                 *Sys., et al. v. Ernst & Young, LLP*

inferences." *Tellabs*, 551 U.S. at 323. The district court must conduct a "comparative inquiry" and assess the possible competing inferences that could be drawn from the allegations, including "plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 323-24. A complaint will survive a motion to dismiss only if "a reasonable person would deem the inference of scienter cogent and *at least as compelling* as any opposing inference one could draw from the facts alleged." *Id.* at 324 (emphasis added). When two equally compelling inferences can be drawn, one demonstrating scienter and the other supporting a nonculpable explanation, *Tellabs* instructs that the complaint should be permitted to move forward. *Frank*, 547 F.3d at 571. This formulation rejects that previously used in the Sixth Circuit, when a plaintiff could survive a motion to dismiss only if the inference of scienter was "the most plausible of competing inferences." *Helwig*, 251 F.3d at 553.

Lastly, the Sixth Circuit subjects the scienter test to the "totality of circumstances" analysis, whereby the alleged facts collectively must give rise to a strong inference of actual knowledge or recklessness. *See PR Diamonds, Inc.*, 364 F.3d at 690 (citation omitted). The court must "consider the complaint in its entirety." *Tellabs*, 551 U.S. at 322.

### 1. *Tellabs* v. Pre-*Tellabs* Standard Analysis

It is well established that we review the district court's dismissal de novo, and we "may affirm on any grounds supported by the record, even though they may be different from the grounds relied on by the district court." *Ley*, 543 F.3d at 805-06 (citation omitted). Nonetheless, plaintiffs argue that the district court applied the incorrect scienter-pleading standard, citing *Frank*, 547 F.3d at 571, which held that the pleading standard of Helwig had been rejected by *Tellabs*.

*Frank* does not support plaintiffs' argument. In *Frank*, the district court incorrectly cited *Tellabs* as requiring the court "to accept plaintiff's inferences of scienter only if those inferences are the *most plausible* of competing inferences." *Id.* at 571. The "most plausible" standard comes from *Helwig*, which "plainly is at odds with

the Supreme Court's holding in *Tellabs*." *Id.* Accordingly, this court vacated the district court's order and remanded.

In this case, in articulating the controlling pleading standard, the district court's parenthetical description of *Tellabs* stated: "plaintiffs must plead facts rendering inference of scienter at least as likely as any plausible opposing inference." This statement correctly describes the *Tellabs* standard. *See Tellabs*, 551 U.S. at 324. However, the district court also repeated this court's pre-*Tellabs* holding, which enunciated the following standard:

> [P]laintiffs are only entitled to the most plausible of competing inferences. *Helwig*, 251 F.3d at 553. The "strong inference" requirement means that a plaintiff is entitled only to the most plausible of competing potential inferences. *Id.* at 553.

The district court correctly applied the law to the facts using the *Tellabs* standard, and the *Helwig* quote was dicta that had no impact on the district court's analysis. *See Konkol v. Diebold, Inc.*, 590 F.3d 390, 397 (6th Cir. 2009) (stating that although the district court opinion contained scattered references to the "most plausible" standard, the court ultimately applied the correct standard). Nonetheless, we review the district court's dismissal *de novo*, using the correct *Tellabs* standard.

### 2. Pleading a Strong Inference of Scienter

Plaintiffs allege that Ernst & Young's material misrepresentation, which subjected it to liability under Section 10(b) and Rule 10b-5, was the Accredo audit report dated August 16, 2002. The report, which contained Ernst & Young's unqualified opinion on Accredo's 2002 financial statements, was included in Accredo's fiscal year 2002 Form 10-K that was filed with the SEC on September 30, 2002. The district court held that the allegations contained in plaintiffs' complaint "do not raise a strong inference that [Ernst & Young] acted with scienter" with regard to the audit report.

On appeal, the class members rely on a number of allegations to establish that Ernst & Young acted with scienter. They assert that Ernst & Young knowingly used

No. 08-6194     *Louisiana School Employees' Retirement*     Page 12
                *Sys., et al. v. Ernst & Young, LLP*

stale and incorrect data in preparing its audit opinion and that there were numerous "red flags" that should have placed Ernst & Young on notice about financial improprieties. Further, they contend that the magnitude of the accounting violations by Ernst & Young creates the inference that Ernst & Young acted knowingly or recklessly in ignoring the company's financial misstatements. Plaintiffs also argue that having Ernst & Young in a position to have its fees increase tremendously if Accredo acquired the Gentiva Division, Ernst & Young's post-Class Period statements, and Accredo's firing of Ernst & Young support the inference that Ernst & Young acted with the requisite scienter. Finally, the class members contend that even if the individual allegations in the complaint are by themselves insufficient, when viewed in their entirety they establish that Ernst & Young acted with scienter. We accept the class's allegations as true and address each of their arguments in turn.

a.

Plaintiffs argue that Ernst & Young rendered audit opinions on Accredo's financial statements contrary to the requirements of Generally Accepted Auditing Standards and Generally Accepted Accounting Principles, approving reports that misstated Accredo's true financial condition by millions of dollars. More specifically, plaintiffs allege that Accredo's and Gentiva's estimates and methodologies were available to Ernst & Young at the time of the audits and that Ernst & Young deliberately or recklessly ignored and failed to investigate them.

As noted above, in the context of securities fraud, recklessness requires proof that the defendant's conduct was highly unreasonable and involved an extreme departure from the standards of ordinary care, meaning that the danger was either known to the defendant or so obvious that any reasonable person would have been aware of it. *PR Diamonds, Inc.*, 364 F.3d at 681. The standard for proof of recklessness in securities fraud cases is especially stringent when the claim is brought against an outside auditor. *Id.* at 693.

The PSLRA requires plaintiffs to plead the elements of fraud in detail. A "complaint alleging accounting irregularities fails to raise a strong inference of scienter if it allege[s] no facts to show that Defendants knew or could have known of the errors, or that their regular procedures should have alerted them to the errors sooner than they actually did." *PR Diamonds, Inc.*, 364 F.3d at 684 (internal quotations omitted). General allegations regarding an auditor's access to information do not raise an inference of fraud. See *id.* at 695-96; *cf. Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 429 (D.N.J. 1999) ("[S]tatement[s that] could be made in relation to the auditor of every corporation" are not sufficient to raise the inference of scienter, because "[i]f [they] were sufficient . . . , it might make every auditor liable in cases of securities fraud."). We have also held that a failure to follow Generally Accepted Accounting Principles is, by itself, insufficient to establish scienter for a securities fraud claim. *Comshare*, 183 F.3d at 553 (citations omitted). Improper accounting alone does not establish scienter whereby "mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud." *Id.* (citation omitted).

The crux of plaintiffs' complaint against the accounting firm is that Ernst & Young failed to follow the professional standards that govern the auditor's testing of management's accounting estimates, such as the allowance for doubtful accounts. Plaintiffs claim that Ernst & Young's testing of the allowance attributable to the Gentiva Division receivables was deficient because Ernst & Young "used old and stale data . . . to test the reasonableness" of the allowance. The "old and stale" data to which the plaintiffs refer is the model for determining the allowance as of June 30, 2002. Plaintiffs cite a note written on an April 2003 fax from an Ernst & Young partner to another outside auditor as circumstantial evidence of scienter. The fax includes two worksheets Ernst & Young used to determine the Gentiva Division's accounts receivable reserve requirement. Plaintiffs point to a handwritten note on the first worksheet stating that the "worksheet was in a file with the previous schedule. This was labeled as 'Q4,' which we assume was 12/00. I do not believe it was ever used even though the [percentages]

No. 08-6194      *Louisiana School Employees' Retirement*                    Page 14
                 *Sys., et al. v. Ernst & Young, LLP*

are much higher. This amount more in line with reality." The "previous schedule" to
which the worksheet is referring is the actual worksheet that Ernst & Young used to
determine the reserve requirement. It is the second worksheet included in the fax. On
the second worksheet, a note states the amount "appears low."

The district court noted that the first schedule bears a date after the events at
issue and surmised that it had been misfiled. However, plaintiffs note that the two
schedules were in the same file. They attach another copy of the second worksheet
bearing a print date of "11/02/2000", which shows that Ernst & Young possessed the
worksheet during the events at issue. Given our standard of review, we must assume that
the first and second worksheets were created in 2000 and that the copies attached to the
fax bear a later date because that is the date they were reprinted. Nonetheless, even if
we make this inference and plaintiffs can show that the second schedule existed in 2000,
they still have not met the high threshold for scienter by establishing only that Ernst &
Young had the data in hand. *See PR Diamonds, Inc.* 364 F.3d at 695-96 (stating that
general allegations regarding an auditor's access to information do not raise an inference
of fraud). Moreover, because "mere allegations that statements in one report should
have been made in earlier reports do not make out a claim of securities fraud,"
*Comshare*, 183 F.3d at 553 (quotation and citation omitted), it follows that even if Ernst
& Young should have included the appropriate data in its audit, its failure to do so does
not create an inference that it acted with the requisite scienter. *See Ley*, 543 F.3d at 817.

b.

Plaintiffs also argue that Ernst & Young disregarded numerous red flags that
should have triggered a higher degree of scrutiny and that collectively these red flags
support a strong inference of scienter. As the district court discussed, and as mentioned
above, for a red flag to create a strong inference of scienter in securities fraud claims
against an outside auditor, it must consist of an "egregious refusal to see the obvious, or
to investigate the doubtful." *PR Diamonds, Inc.*, 364 F.3d at 693 (citation omitted).
"Courts typically look for multiple, obvious red flags before drawing an inference that

No. 08-6194       *Louisiana School Employees' Retirement*                Page 15
                  *Sys., et al. v. Ernst & Young, LLP*

a defendant acted intentionally or recklessly." *Id.* at 686-87 (citations omitted). Mere allegations that an accountant negligently failed to closely review files or follow Generally Accepted Auditing Standards cannot raise a strong inference of scienter. *See Ley*, 543 F.3d at 817 (alleged "red flags" known to auditor, including Generally Accepted Auditing Standard violations and statement by an anonymous witness, did not give rise to scienter).

The district court compared this case to the facts in *Fidel v. Farley*, 392 F.3d 220 (6th Cir. 2004), *overruled on other grounds*, *Tellabs*, 551 U.S. 308 (2007), where we found that alleged red flags did not create the inference that the auditor acted with scienter in preparing its audit report. *Id.* at 229. In *Fidel*, plaintiffs alleged that its outside auditor should have been placed on notice by red flags that included (i) having unfettered access to the documents and employees at all offices; (ii) knowing of a securities fraud lawsuit filed against the company before it completed its audit; (iii) knowing of the company's propensity to disobey financial rules; (iv) receiving an anonymous letter that detailed some of the company's financial mistatements; and (v) noting in its audit papers that the company demonstrated significant "book to physical losses" and was understating its reserve for close-out inventory. *Id.* at 228-29. The court in *Fidel* found no inference of scienter because the red flags occurred before or after the audit period or because there was no indication that the auditors knew or could have known that the red flags affected the financial results for the audit year. *Id.* at 229.

In this case, plaintiffs' list of red flags is not as compelling as that found in *Fidel*. For example, plaintiffs claim that Ernst & Young ignored that Gentiva had reduced the reserve percentages by pointing to a memorandum. The memorandum appears to be an internal Accredo report, which stated:

> For the first item, [Ernst & Young] had used the percentages calculated for CY00 as the basis for the required reserve as of September 2001 as this was the latest information presented to them. [Gentiva] had tweaked the percentages down for September as a result of current collection trends; however, [Ernst & Young] has not seen the basis for doing so.

No. 08-6194     *Louisiana School Employees' Retirement*                    Page 16
                *Sys., et al. v. Ernst & Young, LLP*

> This change in percentages used results in approximately $2,400,000 of
> the change.

While the plaintiffs suggest that this memorandum shows that Ernst & Young discovered
that Gentiva had been "tweak[ing] the percentages down," the competing inference is
that Ernst & Young required Gentiva to show why management did so. We conclude
that the more compelling inference is that Ernst & Young was resisting a lower reserve.

Plaintiffs also allege that investment banker Thomas Weisel Partners' alleged
refusal to consummate the purchase of Gentiva's acute care business was another red
flag that should have focused Ernst & Young on the accounts receivable. Plaintiffs do
not plead facts to support their contention that Ernst & Young knew that this acquisition
was a condition of Accredo's purchase of the Gentiva Division or that Thomas Weisel
Partners backed out of it. Here, plaintiffs do not allege highly particularized facts
demonstrating a connection between the failed acquisition and the accounts receivable.

Plaintiffs also emphasize the Gentiva Division's "history of serious accounts
receivable problems" as revealed in the 2000 Cap Gemini/Ernst & Young consulting
engagement, which recommended that Gentiva write off millions in uncollectible
receivables. However, no one disputes that a substantial portion of the Gentiva Division
accounts receivable was indeed thought to be uncollectible. Plaintiffs seek to use this
allegation to show that Ernst & Young was aware of the prior receivables collection
problems in 2000, which, presumably, should have alerted them to similar problems in
2002. As the district court points out, however, "[t]he timing of this awareness would
not support a finding of scienter" because the complaint does not allege facts suggesting
that Ernst & Young was on notice that the accounts receivable problems were in excess
of the substantial allowance recorded in 2002.

Plaintiffs next claim that during its audits, Ernst & Young saw the days-sales-
outstanding for the acute business "approaching nearly 300 days," allegedly an
indication that "a material portion of the receivables were uncollectible and worthless."
Again, Ernst & Young does not dispute that a portion of the Gentiva Division's accounts

No. 08-6194       *Louisiana School Employees' Retirement*                Page 17
                  *Sys., et al. v. Ernst & Young, LLP*

receivable were uncollectible.  Moreover, plaintiffs do not plead facts that support their contention that Ernst & Young not only knew of the information before issuing its audit report, but also that knowing so would amount to "no audit at all."  *See PR Diamonds, Inc.*, 364 F.3d 693-94 (quotation marks and citations omitted); *see also Konkol*, 590 F.3d at 398 (stating that even monitoring the high day sales outstanding is a general allegation not sufficient to support scienter).  Accordingly, because plaintiffs' red flags rest on conclusory allegations and are devoid of facts, we hold that they do not create an inference that Ernst & Young acted with scienter.

c.

Plaintiffs next argue that the magnitude of the fraud supports the inference that Ernst & Young acted with scienter.  Plaintiffs state that they "are aware of this Court's holding in *Fidel v. Farley*, 392 F.3d 220 (6th Cir. 2004), that the magnitude of an accounting fraud cannot be used to bolster a scienter inference."  Plaintiffs suggest, however, that the "prominent nature of the [Gentiva Divisions'] accounts receivable allowance and the error's $58.5 million magnitude, in combination with the other facts alleged, provides an additional, scienter-bolstering inference."

We have addressed similar allegations of scienter based on the magnitude of fraud with respect to an outside auditor.  "We decline to follow the cases that hold that the magnitude of the financial fraud contributes to an inference of scienter on the part of the defendant."  *Fidel*, 392 F.3d at 231.  Allowing such an inference would eviscerate the principle that accounting errors alone cannot support a finding of scienter.  *Id.*; *Stambaugh v. Corrpro Cos.*, 116 F. App'x 592, 597 (6th Cir. 2004) (declining to find a strong inference of scienter where, among other things, the plaintiff referenced the magnitude of the fraud and the fact that the fraud involved a "material component" of the defendant's business).  Furthermore, as reasoned by the court in *Reiger v. Price Waterhouse Coopers LLP*, to infer scienter solely from the magnitude of the fraud would require hindsight, speculation, and conjecture.  117 F. Supp. 2d 1003, 1013 (S.D. Cal.

2000). We are bound by our holding in *Fidel*, and we thus reject plaintiffs argument that the magnitude of the alleged error was indicative of Ernst & Young's scienter.

d.

Plaintiffs accuse Ernst & Young of being motivated to commit fraud by the promise of future professional fees. Indeed, Ernst & Young's Memphis Office earned $1.1 million in auditing fees from Accredo during fiscal year 2002. Plaintiffs' motive and opportunity allegations, however, do not raise an inference of scienter. "[A]llegations that the auditor earned and wished to continue earning fees from a client do not raise an inference that the auditor acted with the requisite scienter." *Fidel*, 392 F.3d at 232. Even a specific account that was one of the auditor's most lucrative would not imply scienter on the part of the auditor. *See In re Cardinal Health Inc. Sec. Litig.*, 426 F. Supp. 2d 688, 778 (S.D. Ohio 2006).

The complaint contains no allegations that Ernst & Young's fees from Accredo were more significant than its fees from other clients or that Accredo's business represented a significant portion of Ernst & Young's revenue. *See Fidel*, 392 F.3d at 232-33. Plaintiffs allege no facts to support an allegation that Ernst & Young's motive to retain Accredo as a client was any different than its general desire to retain business.

Plaintiffs also point to post-Class Period events to help bolster a strong scienter inference, such as post-Class Period statements and charges leveled in Accredo's lawsuit against Ernst & Young. Specifically, plaintiffs look to an April 2003 statement, which is after the Class Period. William Drummond, an Ernst & Young partner and the lead audit partner for Accredo during the Class Period, admitted to Joel Kimbrough, Accredo's Senior Vice President and CFO, that "there was a problem." Moreover, the facts alleged in the May 5, 2003 professional negligence complaint that Accredo filed against Ernst & Young may support a contention that, at least in Accredo's opinion at the time, the allowance was understated as of June 30, 2002 when Accredo acquired the Gentiva Division.

No. 08-6194         *Louisiana School Employees' Retirement*         Page 19
                    *Sys., et al. v. Ernst & Young, LLP*

Finding scienter based on such allegations would be equivalent to "the classic fraud by hindsight case where a plaintiff alleges that the fact that something turned out badly must mean defendant knew earlier that it would turn out badly." *Konkol*, 590 F.3d at 403 (citation omitted). A statement such as "there was a problem" does not tell us whether Ernst & Young fraudulently refused to see the obvious with regard to the allowance at the time of its audit of the 2002 financial statements. In addition, Accredo's malpractice complaint against Ernst & Young does not support an inference that Ernst & Young engaged in fraud. Without specific allegations showing that Ernst & Young either knew or recklessly disregarded the falsity of its own statements at the time the statements were made, the fact that the statements later turned out to be false is irrelevant to a cause of action under PSLRA. *Id.*

e.

Finally, plaintiffs argue that the allegations contained in the complaint combine to create a strong inference of scienter. In their brief, they argue that the district court was "[e]rroneous . . . [in its] rejection of myriad facts that, considered collectively and holistically . . . raise a strong inference of defendants' scienter." It is true that this court employs a "totality of the circumstances analysis whereby the facts argued collectively must give rise to a strong inference of at least recklessness." *PR Diamonds, Inc.*, 364 F.3d at 683 (citation omitted). However, even taken as a whole, the complaint does not establish that plaintiffs met the PSLRA's requirement of pleading "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Taking plaintiff's allegations as true, as we must, Ernst & Young's alleged failures were not so grievous as to suggest that their work was "no audit at all." *See PR Diamonds, Inc.*, 364 F.3d at 693.

In the end, plaintiffs' allegations do not raise a strong inference that Ernst & Young acted with scienter in affirming Accredo's allegedly fraudulent accounting. Conclusory allegations about what Ernst & Young must or should have known while auditing Accredo do not amount to specific allegations that show material misstatements

No. 08-6194      *Louisiana School Employees' Retirement*      Page 20
               *Sys., et al. v. Ernst & Young, LLP*

or omissions committed with recklessness.  Plaintiffs thus fail to adequately allege all
of the elements of their Section 10(b) and Rule 10b-5 claim.

### B. Leave to Amend

Because we determined that the district court properly dismissed plaintiffs'
complaint against Ernst & Young, we now consider whether the district court erred in
doing so without affording them an opportunity to amend their complaint.  Plaintiffs
never sought leave to amend.  In their opposition to Ernst & Young's motion to dismiss,
plaintiffs asked the district court to allow them the opportunity to move for amendment
should the court "grant any portion" of the motion to dismiss.  In its dismissal order, the
district court made no mention of amendment.  Although in certain instances district
courts may permit the losing party leave to amend when ruling on a motion to dismiss,
under the circumstances of this case, the district court did not err by failing to do so.  *See*
*PR Diamonds, Inc.*, 364 F.3d at 698.

As explained in *PR Diamonds, Inc.*, the review of a district court's denial of a
motion for leave to amend a complaint generally is governed by an abuse of discretion
standard.  *Id.* at 698.  Review, however, is de novo where the reason for the district
court's denial is based on a legal conclusion that the amended pleading would not
withstand a motion to dismiss. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 518 (6th
Cir. 2001).  In this case, the district court did not state why it declined to offer plaintiffs
an opportunity to amend their complaint.  There was no "motion" to deny.  Accordingly,
we will review the district court's actions for abuse of discretion.  *See PR Diamonds,*
*Inc.*, 364 F.3d at 698.

Federal Rule of Civil Procedure 15(a) provides that a district court should freely
grant leave when justice so requires.  However, we have held that the PSLRA restricts
the scope of Rule 15(a) in the context of securities litigation such that plaintiffs have
more limited ability to amend their complaints. *Miller v. Champion Enters., Inc.*, 346
F.3d 660, 692 (6th Cir. 2003).  And while Rule 15 plainly embodies a liberal amendment
policy, in the post-judgment setting we must also take into consideration the competing

No. 08-6194      *Louisiana School Employees' Retirement*      Page 21
                 *Sys., et al. v. Ernst & Young, LLP*

interest of protecting the finality of judgments. *See PR Diamonds, Inc.*, 364 F.3d at 698-99. "Thus, in the post-judgment context, we must be particularly mindful of not only potential prejudice to the non-movant, but also the movant's explanation for failing to seek leave to amend prior to the entry of judgment." *Id.* at 699 (citation omitted).

As stated in *PR Diamonds, Inc.*, "a bare request in an opposition to a motion to dismiss -- without any indication of the particular grounds on which amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a)." *Id.* (citation omitted). A request for leave to amend "almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend." *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000); *see PR Diamonds, Inc.*, 364 F.3d at 699. As the *Begala* decision stated in affirming the district court's dismissal of the plaintiffs' complaint with prejudice:

> Had plaintiffs filed a motion to amend the complaint prior to th[e] Court's consideration of the motions to dismiss and accompanied that motion with a memorandum identifying the proposed amendments, the Court would have considered the motions to dismiss in light of the proposed amendments to the complaint . . . . Absent such a motion, however, Defendant was entitled to a review of the complaint as filed pursuant to Rule 12(b)(6). *Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies* of the complaint and then an opportunity to cure those deficiencies.

214 F.3d at 784.

In this case, plaintiffs failed to follow the proper procedure for requesting leave to amend. They did not actually file a motion to amend; instead, they included the following request in their brief opposing the defendants' motions to dismiss: "Should the Court grant any portion of Ernst & Young's motion to dismiss, Plaintiffs respectfully request an opportunity to move to amend the pleadings and demonstrate that an amendment would cure any deficiencies." In light of plaintiffs' procedural shortcomings and in the context of the PSLRA, we hold that the district court did not abuse its discretion by denying plaintiffs an opportunity to amend their complaint, and we affirm the district court's judgment.

No. 08-6194      *Louisiana School Employees' Retirement*      Page 22
                 *Sys., et al. v. Ernst & Young, LLP*

### III. Conclusion

For the reasons stated above, the district court properly dismissed Plaintiffs' Section 10(b) and Rule 10b-5 claims against Ernst & Young. The district court also did not abuse its discretion in failing to invite Plaintiffs to amend their complaint.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

```
┌─────────────────────────┐
│         FILED           │
│      Sep 22, 2010       │
│  LEONARD GREEN, Clerk   │
└─────────────────────────┘
```

No. 08-6194

LOUISIANA SCHOOL EMPLOYEES' RETIREMENT SYSTEM; DEBRA SWIMAN,
individually and on Behalf of All Others Similarly Situated,
       Plaintiffs - Appellants,

   v.

ERNST & YOUNG, LLP,
       Defendant - Appellee.

Before:  BOGGS, MOORE, and GIBSON, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Tennessee at Memphis.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_Leonard Green_
_____
Leonard Green, Clerk